## IN RE DAVIS' ESTATE—CUMMINGS' APPEAL.

,[Argued July 9, 1891.   Decided December 28, 1891.]

APPEALS—*Appealable order.*—An order denying a petition to vacate an order appointing an administrator of an estate, and asking for the appointment of another person as administrator thereof, is appealable. (*In re McFarland's Estate*, 10 Mont. 445, cited.)

ADMINISTRATORS—*Probate practice.*—Where an alleged will of a decedent is before the court for probate, and a contest pending thereon, it is proper for the court, taking judicial notice of its own proceedings, to refuse to vacate an order for the appointment of a general administrator theretofore made, and to grant general letters of administration to another person upon a petition made for such purposes, as such petition would involve proof of the intestacy of the decedent in advance of the determination of that question by the trial of the contest upon the probate of the will.

SAME—*Same.*—The making of an order for the appointment of a general administrator is not an adjudication of the intestacy of the decedent, binding upon the court until set aside, but a will may be propounded at any time, and its admission to probate *ipso facto* vacates letters of general administration. (BLAKE, C. J., dissenting.)

*Appeal from Second Judicial District, Silver Bow County.*

Probate proceeding. Petition to vacate an order directing the issuance of letters of administration. The petition was denied by McHATTON, J.

*Toole & Wallace,* and *McConnell & Clayberg* (*Robert G. Ingersoll,* and *Nathaniel Myiers,* of counsel), for Appellant.

The order directing the issuance of letters of administration to John A. Davis should have been vacated for the following reasons:—

I. Abandonment and renunciation of his right to administration by failing to qualify, and by doing acts inconsistent with

and antagonistic to his appointment as administrator; as (*a*) the filing of a petition for the probate of a will, in which he asks that the order directing letters of administration to issue to him be vacated and set aside; and (*b*) asking to be appointed special administrator of the estate.   This was clearly a renunciation and abandonment of all right to be administrator under the order of April 28th.   Under section 126 of the Probate Practice Act an administrator may resign his appointment. Now, if an administrator may resign after his appointment, then he certainly has the right to renounce and abandon his right to be appointed, and there could not be a more forcible and clear abandonment and renunciation of the right of John A. Davis to be appointed administrator, than by the demand in his petition for the probate of the alleged will, and that the order directing letters of administration to issue to him be vacated.   The statute especially provides that a person entitled to letters of administration waives his right to be appointed by failing to make application therefor.   (§ 67, Prob. Prac. Act.) His failure to apply is evidence of the fact he does not desire the appointment.   But the renunciation and abandonment by John A. Davis of his right to be appointed administrator is placed beyond all question by his conduct in failing to qualify, and further, by his petition to be appointed special administrator, he states "that there is now no administrator of said estate, and no one authorized to take charge of this property or attend to its business, and it is necessary a special administrator be appointed."   It should be remembered that, at this time, he had the right to qualify under the order of April 28, 1890, and take charge of the estate as general administrator.   Therefore, by his petition for letters of special administration, he positively renounces all right to become general administrator.   He refused to qualify as administrator, and here the question suggests itself, can a man who does not desire to become administrator, out of selfish motives, and to prevent another from being appointed, obtain an order of the court directing letters to issue to him, then refuse to qualify, and use the order of the court as a barrier to keep back another who is entitled to become administrator under the law and the circumstances of such a case, and is willing to qualify as such?

II. The failure of an administrator to qualify by taking the oath required is held to be a renunciation and waiver of his right to administer. (Woerner's Am. Law of Administration, § 265, and cases cited.)

III. The failure to file a bond is held to be a ground for removal of administrator. (*Davenport* v. *Irvine*, 4 Marsh. J. J. 60; *Succession of De Flechier*, 1 La. An. 20; *Clark* v. *Niles*, 42 Miss. 460; Woerner's Am. Law of Administration, § 270.)

IV. The neglect and refusal of an administrator to take possession of an estate is ground for removal. (*Comstock* v. *Crawford*, 3 Wall. 396.)

V. The failure to file an inventory of the estate, as required by the statute, is ground for the removal of an administrator. (*Holladay's Estate*, 18 Or. 168; *Oglesby* v. *Howard*, 43 Ala. 144; *Williams* v. *Tobias*, 37 Ind. 345; *McFadden* v. *Ross*, 93 Ind. 134.)

VI. Section 168 of the Probate Practice Act of Montana provides that: "If any executor or administrator neglects for two months after his appointment to give notice to the creditors as prescribed by this chapter, the court must revoke his letters, and appoint some other person in his stead, equally or the next in order after his appointment."

VII. We admit that the former decision of this court upon the appeal from the order directing John A. Davis to qualify as administrator is the law of the case upon the facts there presented. Now, however, we come before this court on this appeal with additional facts, which, we believe, will be conclusive to the mind of this court of the want of integrity of John A. Davis. When facts arise subsequent to an order appointing a person administrator, or were in existence at that time, but were not brought to the attention of the court, they may be presented, and should be passed upon in connection with the facts upon which the court based its former order. (*Drake* v. *Green*, 10 Allen, 124.) The integrity of John A. Davis was attacked before upon the ground that he had entered into a conspiracy with his brother Erwin to defraud the other heirs of the estate. At that time the chain of evidence showing conspiracy, in the opinion of this court, was incomplete. We now come before the court with additional facts consisting of a con-

tract between John A. Davis and the "Iowa boy," as he is familiarly known, and a contract between John A. Davis and his brother Erwin. These were the missing links before, and now that they are supplied we insist that we have controlling proof of the conspiracy relied upon before, and that the want of integrity because of this conspiracy is shown beyond a doubt.

VIII. John A. Davis has entered into a contract with the Iowa boy which places him in an antagonistic and hostile position to every heir of the estate except his brother Erwin. He has also filed a will for probate, under which he is sole legatee to this entire estate. These facts clearly show that he is an incompetent person to become administrator of this estate. (*Stearns* v. *Fiske*, 18 Pick. 24; *Drake* v. *Green*, 10 Allen, 124; *Putney* v. *Fletcher*, 148 Mass. 247; *State* v. *Bidlingmaier*, 26 Mo. 483; *Moody* v. *Moody*, 29 Ga. 519; *Pickering* v. *Pendexter*, 46 N. H. 69; *Ellmaker's Estate*, 4 Watts, 34; *Bieber's Appeal*, 11 Pa. St. 157; *Thayer* v. *Homer*, 11 Met. 104; *Drew's Appeal*, 58 N. H. 319; *State* v. *Reinhardt*, 31 Mo. 95.) Section 252 of the Probate Practice Act provides that no administrator shall purchase any claim against the estate. Here we find John A. Davis holding a claim to the whole of the estate, which he purchased. When an administrator is removed, the court should appoint the next person entitled to be administrator. (Woerner's Am. Law of Administration, § 244; Prob. Prac. Act, § 168.)

IX. The order refusing to vacate the order of April 28th is appealable. (*In re McFarland's Estate*, 10 Mont. 445.)

*W. W. Dixon, W. F. Sanders, M. Kirkpatrick,* and *Forbis & Forbis,* of counsel, for Respondent.

I. No appeal lies in probate proceedings except in the cases mentioned in section 324 of the Probate Act, and the order here in question is not enumerated in said section. (Hayne on New Trial and Appeal, §§ 188, 200; *Peralta* v. *Castro*, 15 Cal. 511; *Calahan's Estate*, 60 Cal. 232; *Ohm's Estate*, 82 Cal. 160; *Montgomery's Estate*, 55 Cal. 210; *Keane's Estate*, 56 Cal. 407; *Moore's Estate*, 68 Cal. 394; *Sbarboro's Estate*, 70 Cal. 147.) The order itself not being appealable, no appeal lies from the order overruling a motion for a new trial in the matter of said

order; "for in law it is not permitted to do indirectly what is forbidden to be done directly." (*Keane's Estate,* 56 Cal. 407.)

II.   The court below made an order on the twenty-eighth day of April, 1890, appointing John A. Davis administrator of said estate, and directing the issuance of letters to him upon his executing bond and qualifying as such.   Pending the appeal of Root from that order, and before the same was affirmed by this court, to wit, on the 24th of July, 1890, John A. Davis presented to the court below the alleged will of the deceased, and filed his petition praying the probate thereof.   Root and Cummings have filed answers to the said petition denying the genuineness of the will and resisting its probate.   Those issues are now pending, undetermined in the court below.   In this state of the case, pending the contest of the probate of the will, Davis not having qualified as administrator, the District Court had no power or jurisdiction to take any further steps regarding the general administration of the estate; no jurisdiction to grant general letters to Root or any one else, or to revoke the grant already made to John A. Davis, or to require him to qualify, or to do any act whatever as general administrator of the estate.   The power of the court as regards the general administration was and is suspended, and an exigency had arisen which justified and required the appointment of a special administrator to take charge of the estate until it could finally be determined whether the proposed will was the will of the deceased or not.   Until this jurisdictional fact be determined, no question in regard to the general administration, or in regard to the revocation of the grant of letters to John A. Davis, was in order or could be properly considered by the court.   General letters could not have been issued to John A. Davis or to Henry A. Root at the time special letters were issued to Talbott, or at any time after the will was propounded for probate.   This appears by Mrs. Cummings' petition and the record generally. The statute provides that "before letters of administration are granted, the fact of the decedent dying intestate must be proved." (Comp. Stats. p. 291, § 68.)

If it appear that decedent left a will, did not die intestate, the whole jurisdiction to issue letters is gone.   It is a jurisdictional fact, to be alleged in the petition and proved on the hear-

ing. Nor is there power to issue letters if a paper is produced and alleged to be a will and its validity is denied. The issue on the validity of the will must be tried and determined adversely to the proponent thereof before letters can issue. For letters of administration assume there is no will; in truth adjudge that fact, which cannot be done pending an issue upon it. "Letters of general administration granted pending the contest of a will are null and void, and cannot be supported as a grant of administration *pendente lite.*" (1 Wœrner's Am. Law of Administration, p. 402, citing *Slade* v. *Washburn,* 3 Ired. 557–562.) "To the grant of general and original administration upon the estate of a deceased person intestacy is a prerequisite; such allegation should be made in the petition, and the court should have reason to believe the statement true. Letters of general administration granted during the pendency of a contest respecting the probate of a will are null and void." (Schouler on Executors and Administrators, § 91, citing *Bulkley* v. *Redmond,* 2 Bradf. 281; *Slade* v. *Washburn, supra; Ryno* v. *Ryno,* 27 N. J. Eq. 522; *Landers* v. *Stone,* 45 Ind. 404.) Upon principle, upon the language of the statute, and upon authority, it is plain that general letters could not have issued to either Davis or Root at the time the order appealed from was made, or when the special letters were issued to Talbott. After John A. Davis produced the will for probate, until the issue upon it be determined, no general letters can go. (See, also, as analogous authorities, *Brown* v. *Ryder,* 42 N. J. Eq. 356, and notes; *Hicks* v. *Hicks,* 12 Barb. 322; *Estate of Crozier,* 65 Cal. 332; *In re Moore,* 86 Cal. 72; *Ellmaker's Estate,* 4 Watts, 34, cited by appellant; 1 Wœrner's Am. Law of Administration, § 181.)

As it was a prerequisite to the appointment of Root that the court should adjudge the jurisdictional fact that Andrew J. Davis died intestate, and as the determination of that fact was involved in the proceeding already pending in the court, instituted by John A. Davis for the probate of the will, to which proceeding Root and Cummings were both parties, the court could not permit the same question to be litigated by the same parties on the subsequent petition of Cummings. This would have been to anticipate the adjudication of the same issue as

involved in the pending contest for the probate of the will. And as to the appointment of Root or any one else as general administrator, the court properly considered its power to act therein as suspended until the determination of the question of intestacy in the proceeding upon the will.   The court, as we have already said, made no order directing John A. Davis to qualify as administrator.   The issuance of letters to him was upon condition that he first give bond and qualify as adminis- trator.   Before he had entitled himself to letters by qualifying, the will and the petition for its probate were filed in the Dis- trict Court.   The question of intestacy having been raised before the qualification of the appointee, the court properly regarded its power to act upon the general administration as suspended until the settlement of that question, and that no further steps should be taken by the appointee to qualify or act under his appointment, and that in the mean while the estate should remain in the charge of a special administrator.   (*Slade* v. *Washburn*, 3 Ired. 557.)

III.   The omission of an administrator to take the required oath, to file a bond, to take possession of the estate, to file an inventory, to give notice to creditors, would not be sufficient cause for his removal, until he had first been cited by the court to show cause, and had failed to show sufficient cause, and had been allowed by the court a reasonable time within which to perform the omitted acts and had then failed to perform the same.   And this would especially apply where an administrator had acted in good faith, though mistakenly.   (*Succession of Head*, 28 La. An. 800.)

IV.   It is contended that John A. Davis abandoned and renounced his right to administration by praying in his peti- tion for the probate of the will for letters of administration with the will annexed, and that the order of April 28, 1890, directing letters to issue to him, be revoked.   This, however, is a plain misconstruction of the petition.   John A. Davis asked in his petition that upon the admission of the will to probate, and his appointment as administrator with the will annexed, the previous grant of general letters to him be set aside.   It is absurd to suppose that this is a renunciation of his right to administration in the event that the will be not

admitted to probate. Neither did his petition to be appointed special administrator, or anything therein contained, amount to a renunciation of his right to general letters. The allegation of his petition was substantially true: "That there is now no administrator of said estate and no one authorized to take charge of this property and attend to its business, and it is necessary a special administrator be appointed."

V. It is claimed that the contracts between John A. Davis and Erwin Davis, and between John A. Davis and T. J. Davis, establish a want of integrity in John A. Davis, and that for this reason his appointment should be revoked. The question of want of integrity, and any and all other grounds which may be suggested for the revocation of the appointment of John A. Davis, or in any way affecting the general administration of the estate, can only arise for consideration after the issue of intestacy is determined by refusing to probate the will. If the will be admitted to probate, those questions can never arise, for in that event there can be no general administration. The grant would then be of letters with the will annexed, which would, *ipso facto,* supersede the former grant without the formality of a revocation. (*McCauley* v. *Harvey,* 49 Cal. 497. See, also, Croswell's Executors, § 302.) All such questions and suggested grounds of revocation are therefore now premature and irrelevant.

VI. Appellant claims that John A. Davis is disqualified as administrator by reason of having interests antagonistic to the estate. It is not shown or pretended that he has any such interests. He has interests antagonistic to appellant and certain other persons who claim to be heirs of the estate; but this is very different from having interests adverse *to the estate.* Having interests adverse to the other claimants is not a disqualification for appointment as administrator under our statute (§ 59, Prob. Prac. Act), or for revocation of letters. (§§ 113, 114, Prob. Prac. Act.)

HARWOOD, J. — Appeal from an order of the Second Judicial District Court within and for Silver Bow County, refusing to appoint Henry A. Root administrator of the estate of Andrew J. Davis, deceased, upon the petition of Maria Cummings, an alleged sister and heir at law of decedent, filed March 19, 1891.

The record presents for review said petition, the answer of John A. Davis in resistance of such appointment, and all evidence, documents, and records introduced and used in the hearing; all of which are brought up in a statement of the case on motion for new trial, which motion was overruled by the said court.

The facts involved in this case at the time said petition was presented, heard, and determined, pertinent to the questions to be considered and determined herein, are as follows: The decedent died at Butte City, in this State, March 11, 1890, leaving an estate, situate there and elsewhere, valued at about five million dollars. Thereupon several persons, among whom were John A. Davis, a brother, and Henry A. Root, a nephew of decedent, petitioned said court for appointment as general administrator of said estate; and, among other facts set forth in such petitions, it was averred that decedent died intestate. Upon the filing of said petitions, a contest was instituted by said Henry A. Root against the appointment of John A. Davis as such administrator, on certain alleged grounds of disqualification. A hearing was had in said court of said petitions and contest, which was determined April 28, 1890, by the court overruling the objections made to the appointment of John A. Davis, and ordering that letters of administration of said estate be issued to him. Before letters of administration were issued pursuant to said order, however, an appeal was taken therefrom to this court, which appeal was filed and placed on the calendar of the July term, 1890, for hearing. When said appeal came on for hearing in this court at said term, counsel for respondent, John A. Davis, suggested to this court that an instrument in writing purporting to be and alleged to be the last will and testament of decedent had been found since said order appealed from was made; that respondent, John A., had petitioned the lower court for the admission of said alleged will to probate; and that, upon the admission thereof to probate, the order theretofore made for the issuance of general letters of administration to him be vacated and set aside, and that letters of administration with the will annexed be issued to him; a copy of which petition, together with a photographic copy of said alleged will, was filed in this court to substantiate such suggestion. It was further

suggested at the same time that a contest of the validity of said instrument alleged in said petition for probate to be the last will and testament of decedent, and of the admission thereof to probate, had been instituted by Henry A. Root and other heirs at law of decedent, which contest was then pending undetermined in the court below.

In view of that state of facts shown by such suggestions, it was ordered by this court at said July term, 1890, that the hearing of said appeal from the order directing general letters of administration of said estate to issue to John A. Davis be continued until the first Monday in October of the same year; and it was further ordered that in the mean time, until the determination of the appeal from the order directing letters of administration to issue to said John A. Davis, he should not qualify and take charge of said estate under said order appealed from.

Under these conditions respecting said estate it appears the court below deemed it proper and necessary to appoint a special administrator to take charge of and preserve said estate as provided by statute in such cases. (Prob. Prac. Act, § 95.) Accordingly the court made an order of date August 12, 1890, appointing a special administrator of said estate, which order reads as follows: —

"It appearing to the court by the records and proceedings and evidence herein that the said Andrew J. Davis died in Silver Bow County, Montana, on the eleventh day of March, 1890, then being a resident in the said county, and having both real and personal property therein, and that letters of administration were afterwards ordered to issue upon said estate by this court to John A. Davis; and whereas, an appeal was taken from said order of this court to the Supreme Court of this State, and is now pending and undecided therein; and whereas, on the twenty-fourth day of July, 1890, the said John A. Davis filed herein his petition for probate of an instrument purporting to be the last will and testament of the deceased, and for the appointment of the said John A. Davis as administrator with the will annexed; and whereas, objections to said probate have been filed by several parties interested in said estate, and it is evident that there will be delay in granting letters of administration on said estate, and that it is necessary for the preservation of said

estate that a special administrator thereof be appointed by this court; and whereas, the said John A. Davis has heretofore filed herein his petition to be appointed special administrator, and James W. Murphy, public administrator of said Silver Bow County, has also filed his petition herein to be appointed such special administrator; and whereas, objections to the appointment of each of the said persons have been filed herein; and the court having considered the said petitions and all matters therein, and being advised in the premises, and finding that it is necessary that a special administrator of said estate should be appointed, and finding it to be to the best interests of the estate that neither of said petitioners should be appointed special administrator, denies each of their applications, and upon its own motion it is ordered by said court, this twelfth day of August, 1890, that James A. Talbott, a suitable and competent person, and a resident of said Silver Bow County, State of Montana, be, and he is hereby appointed special administrator of the said estate of Andrew J. Davis, deceased, with full power and authority to collect and take charge of the estate of the said Andrew J. Davis, deceased, in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of said estate, and to have such powers and perform such duties as are by law given to and imposed upon special administrators; and that letters as such special administrator shall issue to said James A. Talbott, upon his giving bond in the sum of three million dollars, with sureties to the satisfaction of the judge of this court, and conditioned for the faithful performance of his duties as required by law.

"Dated August 12, 1890."

Pursuant to that order said James A. Talbott qualified and took charge of said estate, and entered upon the discharge of his duties as such special administrator.

The appeal pending in this court from said order of April 28, 1890, to grant letters of administration of said estate to John A. Davis, was finally heard and determined November 24, 1890, by an affirmance of the order of the court below (*Root* v. *Davis*, 10 Mont. 228); and thereafter, on the twentieth day of December, 1890, said John A. Davis made and filed in the court below an offer to qualify and take charge

of said estate as administrator thereof under said order for letters to issue to him, which offer is in terms as follows:—

"John A. Davis respectfully represents and shows to the court: That by an order of this court heretofore made he was appointed administrator of said estate, it being then supposed that said deceased died intestate; that before he qualified as such administrator an appeal was taken from the order of this court appointing him, to the Supreme Court of the State, and said order was affirmed by said Supreme Court in November, 1890; that, pending said appeal, petitioner discovered that there was a will of said deceased, and presented the same to this court for probate, and asked that he be appointed administrator of said estate with said will annexed; that the probate of said will is opposed and contested by Henry A. Root and others, claiming to be interested in said estate, and said opposition and contest is now pending and undetermined in this court; that under said will petitioner is the main party in interest in said estate; that, pending the appeal to the Supreme Court above mentioned, James A. Talbott was by this court appointed special administrator of said estate, and has qualified, and is now acting as such special administrator, and has charge of the property of said estate; that petitioner believes that said estate will be properly and honestly cared for and preserved by said special administrator, and that it will be for the interest of all persons who have or claim any interest in said estate to allow such estate to remain in the hands of such special administrator for the present, or until the matter of the contest of said will is determined, and petitioner upon his part is willing that it should so remain, but that petitioner is now and will at all times be ready and willing to qualify and perform the duties of administrator of said estate, to which he has been appointed by the court, whenever the court shall consider it for the best interests of the parties interested in and claiming said estate that petitioner should so qualify and act as administrator; and petitioner offers now so to do if the court requires it, and does not waive or relinquish any right or claim to said administration by this statement to the court, or otherwise. Petitioner asks that this statement be filed in the matter of said estate.

"Dated December 20, 1890."

When that offer was made by John A. Davis to qualify as administrator, said alleged will of decedent was before the court on a petition for the probate thereof, and the contest thereof was still pending undetermined, and said estate was in charge of the special administrator.    No action was taken on said offer of John A. to qualify, but the estate was allowed by the court to remain in charge of said special administrator.

With these conditions existing in reference to said estate, these proceedings for the appointment of Henry A. Root as general administrator thereof on the petition of Maria Cummings were instituted, and her petition re-asserts or undertakes to revive the petition of Henry A. Root for appointment as administrator of said estate, filed in said court in the first instance.    The petitioner expressly brings before the court for consideration, by allegations and references in her petition as parts thereof, and by introduction in this proceeding, all the petitions for appointment of various persons as administrator of said estate, and all evidence introduced and proceedings had therein in the first instance, together with all evidence, records, and documents introduced, and all proceedings had in regard to the contest of Henry A. Root against the appointment of John A. Davis as administrator of said estate.    In addition to those matters, it is alleged in said petition that John A. Davis has never qualified as administrator of said estate, nor discharged any of the duties required by law of an administrator.    It is further alleged in said petition and shown to the court that on the twenty-third day of June, 1890, an assignment was obtained from Thomas Jefferson Davis of all his right, title, interest, and claims in and to said estate to John A. Davis, which instrument was recorded in the office of the county clerk and recorder of Silver Bow County; and that said Thomas Jefferson was the same person referred to and mentioned as "Jeff" and the "Iowa boy" in the evidence and proceedings in the case of contest between Henry A. Root and John A. Davis for the administratorship of said estate, and determined as reported in 10 Mont. 228.    It was further alleged in said petition of Maria Cummings, and shown, that during the month of April, 1890, John A. Davis, jointly with his brother, Calvin P. Davis, and his sisters, Diana Davis, Eliza-

beth Bowdwin, and Harriet Woods, entered into an agreement with their brother, Erwin Davis, evidenced by writings, whereby said parties first mentioned agreed with their brother Erwin, in consideration of his furnishing all necessary funds wherewith to employ counsel and pay all other expenses incurred, not exceeding two hundred thousand dollars, to prosecute and defend all such actions as might be necessary in order to establish the claims of said parties as heirs to the estate of decedent against the suits, demands, and claims of said Thomas Jefferson, or other claimants of said estate, adverse to the rights of the brothers and sisters, nephews and nieces, of decedent; then the parties to said contract first named agreed to pay to said Erwin Davis one half of all such sums of money and property as the first-named parties to said contract should ultimately derive as heirs of said decedent, which contract was recorded in the public records of said county of Silver Bow, in the office of the clerk and recorder thereof.

It is further alleged in said petition of Maria Cummings for the appointment of Henry A. Root as administrator of said estate that said Erwin Davis is indebted to said estate in the sum of five hundred thousand dollars; and that, as said petitioner was informed and believed, said Erwin was in failing circumstances; that two hundred thousand dollars of principal and interest on said indebtedness was due and unpaid; that no effort had been made to collect or obtain security for said indebtedness; and "that, in the opinion of petitioner, there is great and serious danger in delaying the collection or security of said debt."

Upon the matters set forth in said petition the petitioner predicated a demand that the order of April 28, 1890, for letters of administration on said estate to issue to John A. Davis, be vacated and set aside, and that an order be made appointing Henry A. Root administrator of said estate, and that, upon his qualifying, letters of administration be issued to him; and that thereupon said special administrator, Talbott, be ordered to deliver over to Henry A. the effects belonging to said estate. Upon full hearing of said petition the court entered an order refusing to grant the same, and from that order this appeal is prosecuted.

It is urged by counsel for respondent, John A. Davis, as the first point for consideration, that this court has no jurisdiction to entertain this appeal, for the reason that no appeal lies from said order, as they contend. They insist that this is an appeal from an order refusing to vacate an order for the appointment of an administrator, and refusing to remove the special administrator in charge of said estate; and that no appeal lies from such an order of the lower court.

The purpose of this proceeding was to obtain the appointment of an administrator of said estate. The final determination of the proceeding was an order denying such appointment. Such an order, we think, is without doubt appealable to this court. Our views upon the state of the statute and the Constitution in reference to this question of jurisdiction and practice are so fully set forth in Re McFarland's Estate, 10 Mont. 445, we see no reason to further amplify them.

Did the court err in refusing to appoint Henry A. Root administrator of said estate on the showing made on the hearing of this proceeding?

It is not contended that, when the appointment of said special administrator was made, the circumstances and conditions existing as to said estate did not authorize and sanction such appointment under the following statute: "When there is delay in granting letters testamentary or of administration from any cause, or when such letters are granted irregularly, or no sufficient bond is filed as required, or when no application is made for such letters, or when an administrator or executor dies or is suspended or removed, the probate judge must appoint a special administrator to collect and take charge of the estate of the decedent in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of the estate, or he may direct the public administrator of his county to take charge of the estate." (§ 95, Prob. Prac. Act.)

But in the demand for the appointment of Henry A. Root as general administrator of said estate it is assumed that the fact that John A. Davis had not qualified, and letters of administration had not been issued to him, left the way clear for the appointment of another administrator, and that Henry A. Root was entitled to such appointment.

One of the facts which must be proved to the court before it is authorized to grant letters of administration on an estate is that the decedent died intestate. The statute provides that "letters of administration on the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned." (§ 55, Prob. Prac. Act.) Again, it is provided: "Before letters of administration are granted on the estate of any person who is represented to have died intestate, the fact of his dying intestate must be proved by the testimony of the applicant or others, and the court may examine any other person concerning the time, place, and manner of his death, the place of his residence at the time, the value and character of his property, and whether or not the decedent left a will, and may compel any person to attend as a witness for that purpose." (§ 68, Prob. Prac. Act.)

Now, in the case of this estate no general letters of administration were issued prior to the discovery of the alleged will. There had been merely an order that letters issue to John A. Davis, which order was prevented from taking effect by the appeal and other proceeding above mentioned; and in the mean time said alleged will was offered for probate, and the contest thereof initiated. With this state of facts existing regarding said estate, and in view of the statute above quoted, the petitioner demands the appointment of Root as general administrator. By this proceeding the petitioner asks the court to ignore the fact that an instrument purporting and alleged to be the will of decedent is pending for probate subject to contest, and to entertain proof upon the question as to whether decedent left a will, and find that the proofs show that he died intestate, and grant letters of administration in advance of the determination of that question by the trial of the contest over said alleged will offered for probate. It is said by the Supreme Court of North Carolina in *Slade* v. *Washburn*, 3 Ired. 557, that such a proceeding while a paper purporting to be the will of decedent is before the court for probate, and a contest thereof is pending, involves an absurdity, and that an order appointing an administrator, "made at the same moment when the court entertains a contest respecting the alleged will of decedent, and has an issue made up to try that contest," must be held null

and void.   That is a case directly in point, although stronger than the one at bar, for there general letters of administration upon said estate had actually been issued once; the administrator died, and subsequently an alleged will was brought forward for probate, and an issue of contest framed for trial; whereas, in the case at bar, no letters of administration on said estate were ever issued prior to propounding said alleged will and the forming of the issue to contest the same.   (See, also, *Ryno* v. *Ryno*, 27 N. J. Eq. 522, and *Landers* v. *Stone*, 45 Ind. 404.)   Mr. Schouler, in his work on Executors and Administrators (§ 91), says: "Intestacy fundamental to the grant of general administration: To the grant of general and original administration upon the estate of a deceased person, intestacy is a prerequisite. Such allegation should be made in the petition, and the court should have reason to believe the statement true.   Letters of administration granted during the pendency of a contest respecting the probate of a will, or after a probate, regardless of the executor, are null and void.   And local statutes interpose reasonable delay as to such grants of administration, in order to give full opportunity for the production of a will, so that the estate may be generally committed, if possible, according to the last expressed wishes of the deceased."   The author cites in support of this doctrine the cases cited *supra*, and also the case of *Bulkley* v. *Redmond*, 2 Bradf. 281, which latter case we have not had opportunity to examine.   The same doctrine is also laid down by Mr. Wœrner in his work on the American Law of Administration (vol. 1, p. 402).

Counsel for appellant do not dispute the force and effect of the above quoted statutes and the authorities referred to, but they seek to avoid the application of them to this case, by asserting that before any alleged will of decedent was found and presented for probate the court had, on such evidence as was presented on the original applications for appointment of an administrator, and in the order that letters of administration issue to John A. Davis, found and adjudged that decedent died intestate; and hence the court is bound by such finding and judgment until the same is set aside.   We do not understand with what consistency that position can be assumed by counsel for appellant, inasmuch as they demand that said order to grant

letters of administration to John A. Davis be vacated and set aside.   If that order should be vacated and set aside, how can petitioner rely upon it to support the grant of letters of administration to Henry A. Root?   Not only so, but John A. Davis has asked that said order be set aside and vacated for the reason that an alleged will has been found and offered for probate. Appellant's counsel lay great stress upon the fact that in the order of April 28, 1890, directing letters of administration to be issued to John A. Davis, the court, on the evidence then before it, found and adjudged that decedent died intestate. They point to that order, which they ask to be vacated and set aside, and ask also that it be used to estop the court from making any inquiry into the fact which the statute declares shall be inquired into "before letters of administration are granted." But appellant's position in this respect is untenable for other reasons.

It is *first* to be observed that, while the statute requires the court to demand proof that decedent died intestate before granting letters of administration, it does not require that the court shall find and adjudge in that inquiry that decedent died intestate.   Schouler says: "Such allegation should be made in the petition, and the court should have reason to believe the statement true."   (Schouler on Ex'rs & Adm'rs [2d ed.], § 91.)   The proof of that fact should be by the best known and obtainable evidence at the time, and should negative the proposition that decedent left a will; and it should be shown that such proof was made before grant of letters of administration.   While the law requires inquiry to be made as to whether decedent left a will, and makes the right to grant letters of general administration dependent on the fact that according to the proof attainable decedent left no will, it does not require that the court shall solemnly determine by judgment that decedent died intestate. For the statute leaves the question open for the propounding of a will at any time (§ 9, Prob. Prac. Act), and the admission of a will to probate, *ipso facto*, supersedes and vacates the grant of letters of general administration.   (§ 102, Prob. Prac. Act.)

*Secondly*, it should be observed that, if the way was clear from any cause for the appointment of an administrator, as petitioner assumed when this proceeding was commenced, then

the court, in making such appointment, must pursue the same
course therein "as is directed in relation to original letters of
administration." Section 105 of the Probate Practice Act pro-
vides: "If all such executors or administrators die or become
incapable, or the power and authority of all of them is revoked,
the Probate Court must issue letters of administration with the
will annexed, or otherwise, to the widow, or next of kin, or
others, in the same order and manner as is directed in relation
to original letters of administration."

So that, if time has developed the fact (at first unknown) that
decedent left a will, or if a paper purporting to be his will is
propounded for probate, and a contest thereof is instituted, how
can it be reasonably contended, in view of the statutes just
quoted, that the court, in considering the question of the ap-
pointment of an administrator, shall not look to the fact as to
whether decedent died intestate? The statute provides that the
court shall proceed in the same manner and order as is directed
in relation to the grant of original letters of administration.
If this statute is to be followed, then the court must look to the
conditions existing in relation to the estate at any time when it
is called upon to appoint an administrator; and the court is not
confined to such evidence as parties may bring to its attention
concerning the question of testacy or intestacy of decedent.
The statute provides that the court may send for witnesses,
and examine them upon this question (§ 68, Prob. Prac. Act),
and the court may always take judicial notice of proceedings
pending before it. (§ 643, Code Civ. Proc.) "Every court,"
says Mr. Chitty, "is bound to take judicial notice of its own
course of proceedings and of those of other Superior Courts."
(Chitty on Pleading, 242.) If the rule were otherwise, end-
less absurdity would be committed in judicial proceedings. It
is just as incumbent upon the court to notice the fact that an
alleged will is pending before it for probate under contest, and
that thereby the fact as to whether decedent died testate or in-
testate is in issue, to be determined by proceeding in the manner
provided by law, as it is for the court to notice the fact that, on
the first occasion when letters of administration were petitioned
for, evidence was produced to the effect that decedent died intes-
tate, and that on such showing the court ordered letters of ad-

ministration to issue.   Counsel for appellant, however, contend in this case that, notwithstanding the statute and precedents, the court should notice one proceeding and blindfold itself as to the other.   We observe that in the petition in this proceeding for the appointment of Henry A. Root, the petitioner invokes the court to take notice of the proceedings theretofore had in reference to said estate, and the papers, files, and records theretofore made therein; and especially brings to the attention of the court the proceedings offering for probate an alleged will of decedent, and the contest thereof set up by other heirs at law.   Now, if it was proper for the court to take notice of these proceedings, and there is no doubt of it, then the court would at once, in considering this petition, and the law applicable, be confronted with the fact that it was asked to inquire into the question as to whether decedent died testate or intestate, while that question was pending in an issue framed for trial in that court to contest an alleged will propounded for probate; and, moreover, that in granting the prayer of this petition the court would be assuming that it was proved that decedent left no will, while at the same time the court entertained a petition for the admission to probate of a document purporting and alleged to be the last will and testament of decedent.

We are of the opinion that the order and judgment of the court denying said petition and the motion for new trial ought to be affirmed, and it is so ordered.

*Affirmed.*

DE WITT, J., concurs.

BLAKE, C. J. (*dissenting*).—The order appointing John A. Davis administrator of the estate of Andrew J. Davis, deceased, has not been revoked or suspended, and remains in full force. (Prob. Prac. Act, § 1.)   This party has failed or refused to qualify according to law and enter upon the discharge of his trust.   The circumstances which environ this omission are stated in the opinion of the court, and need not be reiterated.   The statute appears to have pointed out the proceedings which should have been followed in this matter: "If, after granting letters of administration on the ground of intestacy, a will of the decedent is duly proved and allowed by the court, the letters of

administration must be revoked, and the powers of administrator shall cease, and he must render an account of his administration within such time as the court shall direct." (Prob. Prac. Act, § 102.)

The foregoing order was made upon the sole ground of the intestacy of Andrew J. Davis, deceased, and directed that letters of administration should be issued to John A. Davis. If this person had at any time when the appeal from that order was not pending in this court executed the bond, and taken the official oath, letters of administration upon the said estate, signed by the clerk of the court below, would have been issued without any further decree thereon. There was no prohibition by the law of such action upon his part. The chief element of the section *supra* is that the court had been governed in the exercise of its jurisdiction by the fact that the deceased person died intestate, and has therefore made an order which might be erroneous, and should be set aside. No person can be appointed executor of the alleged will of said Andrew J. Davis, deceased, until this order has been revoked. The statute defines this time to be when the will of the decedent has been "duly proved and allowed by the court." There is a contest concerning the said will, which has not been proved and allowed. I know of no legal reason for the refusal of the said John A. Davis to comply with the provisions of the Probate Practice Act, which regulate the administration of the estates of deceased persons, and think that the order for his appointment should be set aside, and that the court below should proceed to hear and determine upon its merits the petition of the appellant.

