NO. 83-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

------------

IN THE MATTER OF THE ESTATE OF

WALTER L. PEGG, Deceased.

------------

Appeal from: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell
Honorable Nat Allen presiding.

Counsel of Record:

For Appellant:

Jock B. West argued, Billings, Montana

For Respondent:

Elmer J. Dolve and Russell K. Fillner, Billings, Montana
Russell K. Fillner argued, Billings, Montana

------------

Submitted: December 8, 1983

Decided: April 3, 1984

Filed:    APR 3 1984

*Ethel M. [signature]*
_____
                    Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

This appeal stems from orders of the District Court of the Fourteenth Judicial Circuit, Musselshell County, denying a motion to remove the personal representative of the estate of Walter L. Pegg and granting a motion to approve settlement of a wrongful death action pursued by the same personal representative. For the reasons stated below, we affirm in part, reverse in part, and remand the case to the District Court of the Thirteenth Judicial District, Yellowstone County, for further proceedings.

Walter L. Pegg was killed in a helicopter crash approximately twenty miles southeast of Williston, North Dakota, on May 1, 1981. According to the death certificate filed with the North Dakota Department of Health, the interval between the crash and Walter Pegg's death was seconds. There were no survivors among the other passengers, including the pilot.

At the time of his death, Walter Pegg was domiciled in Montana and was married to his third wife, Virginia Fidel Pegg. In addition to Virginia, Walter was survived by children from his previous marriages: Sean and Tom, the issue of Walter and his first wife, Karen Pegg Symonds, and Ian, the issue of Walter and his second wife, Carol Pegg. Tom resided with his father and Virginia briefly in 1979, but now lives with his mother and other brother in Florida. Ian and his mother reside in Oregon.

Walter died intestate. Virginia sought appointment as the personal representative of his estate, and an order to that effect was granted on April 28, 1982, by the District

-2-

Court of the Fourteenth Judicial District, Musselshell County. Notice of her appointment was sent to all potential heirs. At approximately the same time, Virginia was involved in negotiations with the insurance company of Blain Helicopters, the owner of the aircraft in which her husband was killed. She also filed a wrongful death action against Blain in April of 1982, in the District Court of the Thirteenth Judicial District, Yellowstone County. Although negotiations with the insurance company were proceeding successfully, the complaint was filed within the two-year statute of limitations to protect the interests of Walter's heirs in the event negotiations proved fruitless.

By late 1982, Virginia received an offer from the company to settle the wrongful death claim for $450,000, under the conditions that a court approve the settlement and that the wrongful death action be dismissed. Virginia filed a petition with the District Court of the Fourteenth Judicial District to have the settlement approved and the other action dismissed. In the petition, Virginia proposed that $100,000 of the settlement be distributed among the children in equal shares undiminished by attorney's fees, court costs and expenses. The remaining $350,000 would be allocated to Virginia, and she would be responsible for her own attorney's fees, court costs and expenses. During the negotiations, the ex-wives, as guardians and next friends of their children, were represented by attorney Jock West. Virginia was represented by attorneys Russell Fillner and Elmer Dolve.

The ex-wives were dissatisfied with the proposed distribution, and decided to contest it. The hearing on the

-3-

proposed settlement had been set for December 28th, but one day before the hearing, the attorney for the ex-wives filed other petitions with the court requesting that Virginia be removed as personal representative. One petition was filed on behalf of Karen's children, and the other on behalf of Carol's child. In the petitions, the ex-wives maintained that Virginia had intentionally misrepresented material facts and had engaged in fraudulent acts with respect to settlement of the wrongful death claim. Specifically, the ex-wives contended that Virginia (1) had never married Walter, and therefore could not serve as personal representative; (2) had assisted in a fraudulent divorce action filed by Walter against his first wife, Karen, in 1979; and (3) had deceitfully refused to file a survivorship claim against Blain Helicopters because she allegedly had more to gain financially from a wrongful death suit. On the same day these petitions were filed, the ex-wives' attorney filed a wrongful death action against Blain Helicopters on behalf of the children. This suit was filed in the Thirteenth Judicial District, Yellowstone County.

A hearing on the petitions to remove was held on December 30, 1982. Counsel for Virginia waived notice requirements, and the ex-wives' attorney was allowed to press arguments for Virginia's removal. The first contention--that Virginia had never married Walter--proved false, as Virginia's counsel produced a marriage certificate indicating that the couple had been married in Las Vegas in February of 1980. Counsel for the ex-wives then concentrated his attention on the remaining grounds. Counsel insisted that, in a 1979 divorce action filed by

Walter against Karen, Walter claimed that no children had been born of the marriage. Of course, the couple had two children, and the ex-wives contended that Virginia was aware of Walter's apparent misrepresentation to the court. The only witness to testify about these matters was Virginia. She testified that she knew that Tom and Sean were Walter's children by a former marriage, and that Tom had lived with them in Montana for a time, but that she did not know they were the children of Karen. In fact, she testified that she knew nothing about Karen Pegg or the divorce action filed by Walter against Karen in 1979.

Counsel for the ex-wives also attempted to impute fraud on Virginia for failing to file a survivorship claim against the helicopter company. Any recovery from a survivorship action or related settlement would become part of the decedent's estate, and therefore pass to Virginia and the minor children under the intestacy statutes, with Virginia receiving one third of the settlement and the children the remainder. See Section 72-2-202(2), MCA. Because the proceeds of a wrongful death recovery would not become part of the estate, and could therefore be allocated differently, Virginia was allegedly in a position to increase unfairly her portion of any settlement from the insurance company. There was no evidence produced in support of this claim other than the coincidence that Virginia could, by law, benefit more from a wrongful death recovery. Counsel for Virginia responded that a survivorship action had been contemplated, but had not been pursued for fear that Walter's instantaneous death would prohibit recovery. The wrongful death theory of relief was

-5-

deemed a more effective course of action.

The District Court concluded that there was no evidence to support removal of Virginia as personal representative, and denied the ex-wives' petitions. Orders to that effect were signed on the day of the hearing, December 30, 1982, and notices of entry of order were entered and served that same day. The hearing on the proposed settlement offer was reset for January 10, 1983.

At the January 10th hearing, the attorney for the ex-wives again filed a petition for removal of Virginia as the personal representative. This petition alleged that another pleading had been simultaneously filed in the court that had entertained Walter's divorce action in 1979. This petition alleged that service upon Karen Pegg Symonds had been improper, and that the final decree in that action was void. If the marriage of Karen and Walter was not dissolved, then the marriage of Virginia and Walter was void. Thus, Virginia could not serve as personal representative.

The District Court orally denied the ex-wives petitions. In a memorandum issued after the hearing, the court indicated that the petitions were "frivolous [and] brought for purpose of delay and as an impermissible collateral attack on a final decree in another court." In the court's view, the ex-wives and their counsel were aware of all the facts necessary to support the latest petition during the first hearing; the doctrine of res judicata thus barred any consideration of these grounds. Moreover, the divorce decree could not be shown to be void on its face. Thus, collateral attack was impermissible.

-6-

After the petition was denied, the court proceeded to hear testimony concerning the proposed settlement. Counsel for the ex-wives refused to participate in this portion of the hearing. His position was that the court, acting as a court of probate, had no jurisdiction over settlement of a wrongful death claim. To take part in the hearings would have been, in counsel's view, recognition that the court had jurisdiction over the parties and the subject matter. The hearing proceeded without involvement of the ex-wives or their attorney. The court adopted the proposed distribution of the wrongful death recovery and issued an order to that effect. Counsel for the ex-wives renewed his objection to jurisdiction for the record.

On February 7, 1983, counsel for the ex-wives filed a notice of appeal "from the final orders entered by the [trial court] on the 10th of January, 1983 . . .", including the denial of the petitions to remove Virginia as personal representative. For the purposes of this opinion, the ex-wives will be referred to as appellants, and Virginia as the respondent.

The issues presented for review are:

(1) Whether the District Court erred by denying the motions to remove the personal representative?

(2) Whether the District Court, acting as a court of probate, lacked jurisdiction to approve settlement of a wrongful death claim filed by the personal representative in another Montana judicial district?

Before proceeding to these issues, we note and dispose of another argument, first raised in appellants' reply brief, that all of the trial court's orders of January 10

are void because the trial judge, who officially retired before that date, could not under Section 19-5-103, MCA, issue any final orders or judgments. This jurisdictional matter has been addressed in a recent decision, State ex rel. Wilcox and Bradley v. District Court, No. 83-391. Following that decision here, we conclude that the trial judge had authority to perform all functions of an active district judge, including the issuance of final orders and judgments.

THE MOTION TO REMOVE THE PERSONAL REPRESENTATIVE

Section 72-1-209, MCA, provides that appellate review of all probate matters "is governed by the statutes and rules applicable to the appeals to the supreme court." Rule 1(c), M.R.App.Civ.P. provides that a party may appeal from "a judgment or order granting or refusing to grant, revoking or refusing to revoke, letters testamentary, or of administration . . ." In issuing the December 30th orders, the District Court effectively refused to revoke respondent's status as administrator of Walter Pegg's estate and letters testamentary granted to her. The orders were final and therefore appealable. This conclusion is consistent with In re Davis' Estate (1891), 11 Mont. 196, 28 P. 645, wherein this Court held that an order denying a petition to vacate an order appointing an administrator of an estate is appealable.

The conclusion that the District Court's December 30th orders were final and appealable can also be deduced from reference to the laws of sister states. The language of Rule 1(c), M.R.App.Civ.P., is virtually identical to that used in Cal.Prob.Code Section 1240(a) (West 1981), which

provides that "[a]n appeal may be taken from an order or the refusal to make an order . . . .[g]ranting or revoking letters testamentary or of administration." An order refusing to revoke letters testamentary is in effect an order denying a petition to remove an executor or personal representative. In re Cuneo's Estate (1963), 214 Cal.App.2d 381, 29 Cal.Rptr. 497. Such an order is deemed final and conclusive and is therefore appealable. In re Exterstein's Estate (1934), 2 Cal.2d 13, 38 P.2d 151. Even those states like Colorado, which hold that orders of a probate court are normally interlocutory and therefore not appealable, recognize that, where the petitioner is attempting to disqualify the personal representative, an order of the court granting or denying the petition is considered final and appealable. See, e.g., O'Neill v. Irwin (1966), 160 Colo. 99, 414 P.2d 122.

Because the December 30th orders were final and appealable, appellants had thirty days from the notice of entry of the orders to file an appeal. Rule 5, M.R.App.Civ.P. Appellants did not follow this procedure. Instead, they simply filed another petition for removal immediately before the January 10th hearing scheduled for arguments on the proposed settlement of the wrongful death claim and apportionment of the proceeds thereof. As indicated earlier, the District Court summarily denied this petition, concluding that any further consideration of appellants' arguments was barred by, among other things, the doctrine of res judicata. Appellants' notice of appeal of all of the orders made on January 10th, including the one denying the new petition, was entered on February 2, 1983,

-9-

thirty-four days after the December 30th orders were issued, or four days beyond the period prescribed by the rules for filing notice of appeal.

Appellants apparantly believed that by raising "new grounds" for removal on January 10th, i.e., that Walter's marriage to Virginia was void because of an improper divorce action involving Walter and his second wife, they could somehow perfect an appeal from an adverse ruling by the trial court regardless of any failure to file a timely appeal from the December 30th orders. As the court noted, however, appellants were in possession of all the facts which possibly would have supported the January 10th petition at the time the earlier petitions were considered and denied. It is well settled that a judgment or order is conclusive as to all matters which could have been litigated under the issues raised by the original pleadings. See Mondakota v. Reed (D.Mont. 1965), 244 F.Supp. 327, 330; Sherlock v. Greaves (1938), 106 Mont. 206, 214, 76 P.2d 87,90. Appellants did not even offer an argument that the failure to raise the marital status question could be excused for reasons of inadvertance, excusable neglect, or newly discovered evidence. Under these circumstances, the appellants' new petition had all the appearances of an unjustified delaying tactic. Appellants should have pressed their appeal immediately after the issuance of the December 30th orders. Because they did not, we cannot, under these facts, reach the merits of appellants' arguments in support of removal of the personal representative.

THE DISTRICT COURT'S JURISDICTION OVER THE WRONGFUL DEATH CLAIM

-10-

There is no question that this portion of the appeal is properly before this Court, as appellants' notice of appeal unquestionably protects review of the settlement issue. We therefore consider the merits of appellants' argument.

The personal representative of the decedent clearly has a prior right to pursue a wrongful death action on behalf of the heirs, in order to avoid the diseconomies and confusion caused by a plethora of lawsuits. State ex rel. Carroll v. District Court (1961), 139 Mont. 367, 364 P.2d 739. This rule was recently reaffirmed in State ex rel. Palmer v. District Court (Mont. 1980), 619 P.2d 1201, 38 St.Rep. 1876. Thus, respondent was within her rights to pursue the wrongful death action against Blain Helicopters. At stake, however, is the disposition of the settlement of that claim. In Swanson v. Champion International Corp., (Mont. 1982), 646 P.2d 1166, 1169, 39 St.Rep. 639, 642, we emphasized that, while the proceeds of any survivorship recovery or settlement belong to the decedent's estate, the proceeds of any wrongful death recovery or settlement are personal to the heirs and are not part of the decedent's estate. From this, appellants infer that the trial court in which the claim was filed, and not the court considering the probate of the decedent's estate, has jurisdiction over approval of any proposed distribution of the recovery or settlement. Appellant notes references in Swanson, supra, to the "trial court" allocating the money damages resulting from a wrongful death award, 646 P.2d at 1171, 39 St.Rep. at 644. Carroll, supra, can also be fairly read to support appellants' inference. 139 Mont. at 372, 364 P.2d at 741-2

(reference to district court hearing the wrongful death action and that court's duty to allocate amount of recovery). Notwithstanding the reasonableness of these observations, more is required to support appellants' position than dicta and inferences arising therefrom.

A proper resolution of this portion of the appeal requires a historical analysis of the wrongful death cause of action and its subsequent construction by the courts. Most wrongful death statutes are patterned after the original English law, Lord Campbell's Act, 1846, 9 & 10 Vict., ch. 93. The Act created a claim for relief for the heirs of an individual whose death was the result of wrongful action or neglect, with any damages obtained being personal to those heirs. Montana adopted the Act in 1871 with only minor changes in wording. 1871 Mont.Terr.Laws 61. A streamlined version of the Act, patterned after Cal.Civ.Proc.Code Section 377, replaced the original version six years later. 1877 Mont.Terr.Laws, Code of Civil Procedure, Section 14 at 42. The streamlined statute, which has remained virtually unchanged since 1877, and is now enumerated Section 27-1-513, MCA, does not specify whether the estate or the heirs directly benefit from any recovery.

Any uncertainty as to whether the proceeds of any recovery or settlement are personal to the heirs has been settled by courts in other jurisdictions. In In re Riccomi's Estate (1921), 185 Cal. 458, 197 P. 97, the California Supreme Court construed Cal. Civ.Proc.Code, Section 377, which then contained the same language as now appears in Section 27-1-513, MCA. The California court held that:

> "It is well settled that the action
> authorized by the section is one solely
> for the benefit of the heirs by which
> they may be compensated for the pecuniary
> loss suffered by them by reason of the
> loss of their relatives. The money
> recovered constitutes no part of the
> estate of the deceased, and where the
> action is brought or the money recovered
> by the personal representative of the
> deceased, such personal representative is
> acting solely as a statutory trustee for
> the benefit of the heirs on account of
> whom the recovery is had." (Emphasis
> added.) 185 Cal. at 460-61, 197 P. at 98.

Furthermore, because the proceeds were not part of the estate, a lower court, sitting in its capacity as a court of probate, had no jurisdiction over those proceeds of their distribution. 185 Cal. at 463-64, 197 P. at 99.

Courts in other states having some version of Lord Campbell's act on their books have adhered to the same course of reasoning and have concluded that separate probate courts or district courts acting as probate courts lack jurisdiction to approve settlement of, or allocate the proceeds of, wrongful death claims. See, e.g., In re Milliman's Estate (1965), 2 Ariz.App. 155, 406 P.2d 873, reaff'd as modified, 2 Ariz.App. 338, 409 P.2d 54; In re Mayer's Estate (1909), 106 Minn. 484, 119 N.W. 217; Aho v. Republic Iron & Steel Co. (1908), 104 Minn. 322, 116 N.W. 590; Ellenberg v. Arthur (1936), 178 S.C. 490, 183 S.E. 306. Some courts have reached the opposite conclusion, but these decisions are distinguishable, as the wrongful death statutes construed in those cases contain express provisions requiring that the proceeds of any recovery or settlement be allocated directly to the decedents estate, e.g., Keogh v. City of Bridgeport (1982), ____Conn.____, 444 A.2d 225, or according to intestacy statutes, e.g., Holmes v. Price

-13-

(1960), 186 Kan. 623, 352 P.2d 5. Washington has construed its wrongful death statute, which is essentially similar to Montana's, as requiring apportionment of proceeds by a probate court. Hansen v. Stimson Mill. Co (1936), 195 Wash. 621, 81 P.2d 855. This opinion, however, is of dubious value. It is not clear what authority the Washington court relies on for its holding. Strangely enough, that portion of the opinion contains a reference to Riccomi's Estate, supra, which held otherwise. See Hansen, 195 Wash. 621, 81 P.2d at 856. And, the Hanson opinion has been criticized recently by some members of the Washington high court as an improper holding. See, e.g., Wood v. Dunlop (1974), 83 Wash.2d. 719, 521 P.2d 1177, 1180-81 (Finley, J., concurring).

On the basis of the analysis above, it would appear that the district court in the immediate case exceeded the bounds of its jurisdiction and should be reversed. It would be inappropriate, however, to draw that conclusion immediately. None of the cases which support appellants' position clearly articulate an unambiguous rationale for denying a probate court the authority to apportion proceeds of a wrongful death recovery. Possibly, the rationale may lie in preserving some distinct jurisdictional differences between separate courts. If so, it is unclear whether this distinction has been carried over into modern courts. Respondent makes a reasoned argument that the provisions of the Uniform Probate Code, as adopted in Montana, contemplate allowing a district court, sitting in probate, to assume jurisdiction of the settlement of a wrongful death claim for reasons of judicial economy. Specifically, respondent

-14-

relies upon Section 72-1-202(2), MCA, (Unif. Probate Code Section 1-302), which gives the court authority "to make orders, judgments, and decrees <u>and take all other action necessary and proper to administer justice in the matters which come before it</u>." (Emphasis added.) Respondent also cites Section 72-3-605, MCA (Unif. Probate Code Section 3-704), which allows the personal representative to "invoke the jurisdiction of the court, in proceedings authorized by this code, to resolve questions concerning the estate or its administration." Finally, respondent notes that Section 72-1-102, MCA (Unif. Probate Code Section 1-102) requires a liberal construction of all provisions of the probate law. From these, respondent argues that she was acting within her authority to submit her proposed settlement to the District Court supervising her administration of the estate, and that the court was in turn authorized to consider the settlement offer and apportion the proceeds among the heirs.

Respondent's construction of the probate laws admittedly possesses a certain logic. Yet no other state that has adopted these provisions of the Uniform Probate Code has construed them in the direction urged by respondent and followed by the district court. See Annot., Unif. Prob. Code Sections 1-102, 1-302, 3-704, 8 U.L.A. 24, 38, 321 (1983) (annotations of cases construing code sections in uniform code states). Moreover, the code was not designed to replace all principles of probate law in effect prior to adoption of the code. Indeed, Section 72-1-104, MCA, provides that "[u]nless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions." There is no provision in the

code specifically authorizing a probate court to treat the proceeds of a wrongful death settlement or recovery as part of a decedent's estate and hence authorizing the court to allocate the proceeds. Arguably, then, the traditional rule enunciated by the California court and other state courts still applies notwithstanding the provisions of Sections 72-1-202(2) and 72-3-605.

Similarly, a fair reading of the previously cited code sections in light of the traditional rule suggests that they cannot be construed to reach a wrongful death award. Section 72-1-202(2) is preceeded by language that a probate court has subject matter jurisdiction over estates of decedents. See Section 72-1-202(1)(a), MCA. Section 72-3-605 only authorizes the personal representative to invoke the probate court's jurisdiction to resolve matters pertaining to the decedent's estate. Because the proceeds of the wrongful death recovery or settlement are not considered part of the estate under the traditional rule, these sections of the probate code cannot be relied upon to vest the court with jurisdiction.

In summary, it is possible that the drafters of the uniform code never contemplated superseding the traditional rule in the way suggested by respondent. The law of wrongful death and the law of probate have developed separately through the years, and while the reasons for requiring separate treatment of the damages obtained in a wrongful death action have not always been clearly expressed, it is still uncertain whether this separate treatment should be abolished. Obviously, if both the probate and wrongful death actions had been filed in the

-16-

same judicial district, the court would have had no legal difficulty in asserting jurisdiction over both proceedings, although the court in Riccomi's Estate, supra, also held that, while one court could assume jurisdiction over both actions, it would have to handle them separately. 185 Cal. at 464, 197 P. at 99. See also 55 Cal.Jur 2d Wrongful Death Section 31, at 428. Here, where the two actions were filed in different judicial districts, the district court acting in probate undoubtedly exercised jurisdiction not intended by the traditional rule when it assumed authority over the settlement offer, approved it, and then ordered dismissal of the personal representative's wrongful death action filed in the other judicial district.

In concluding that the district court exceeded its jurisdiction, we are not ignoring the potential economies of allowing a district court acting in probate to assume the task of settling a related matter such as a wrongful death claim filed in another judicial district. As noted earlier, however, the decision to grant district courts that authority is one made by legislatures. See Keough, supra; Holmes, supra. We leave it to the Montana legislature to decide whether district courts, acting in their probate jurisdiction, should have some kind of authority over wrongful death claims filed in other judicial districts.

JUDGMENT

The order of the District Court denying appellants' motion to remove the personal representative is affirmed. The order of the same court, dated January 10, 1983, approving settlement of the claim and apportioning the proceeds, is vacated. The orders of the same court, dated

February 2, 1983, authorizing the personal representative to dismiss appellants' wrongful death action and to sign releases on behalf of the natural mothers and/or guardians of the minor children are likewise vacated. Civil Action DV-82-858, the wrongful death action filed by the personal representative in Yellowstone County, is reinstated. Civil Action DV-82-2287, the wrongful death action filed by appellants in Yellowstone County, is dismissed. The cause now on appeal is remanded to the District Court of the Thirteenth Judicial District, Yellowstone County, for proceedings on the wrongful death settlement.

_____
Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea dissents in part and will file a written dissent in part later.