[Civ. No. 56359. Second Dist., Div. Five. Mar. 5, 1980.]

DON L. BAITY, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY,
Defendant and Respondent.

COUNSEL

Lemaire, Faunce & Katznelson and Mark Ellis Singer for Plaintiff and Appellant.

John H. Larson, County Counsel, William F. Stewart, Chief Deputy County Counsel, and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.

OPINION

KAUS, P. J.—Appellant Don L. Baity appeals from a trial court's denial of his petition for a peremptory writ of mandate. (Code Civ. Proc., § 1094.5.)

FACTS

Baity is a custodian, employed by the City of Los Angeles since 1959. In that capacity he works a normal 40-hour week. From 1961 to 1975, Baity also held a custodial position with the County of Los Angeles, which position also required a 40-hour commitment.

In 1969 the Los Angeles County Board of Supervisors adopted section 72 of the Los Angeles County Administrative Code. The ordinance stated: "No person shall be employed in a full-time position in the County service, as defined by the County Salary Ordinance, for which compensation is provided, who performs continuous or regular service outside of his regular working hours for the County in any gainful profession, trade, or business or occupation whatsoever, for any person, firm, corporation or governmental entity, or who is so engaged in his own behalf, in excess of twenty-four (24) hours per week; provided, however, that this provision shall not apply to a person holding a position in the County service which is less than full-time, nor to any person in the service of the County while on leave of absence from the County service without pay. *It is the purpose of this provision to prohibit the employment of persons in paid full-time County positions who, by reason of their outside activities, impair their efficiency in the County service.*" (Italics added.)

Thereafter, the county informed Baity that he was in violation of section 72; he refused, however, to discuss the matter. The county then brought a variety of disciplinary actions against him, which proceedings culminated in his discharge on the ground of insubordination.

Upon Baity's appeal to the county civil service commission, a hearing was held wherein Baity established that he "performed his job functions

within reasonable standards of acceptability and certainly no suspension or discharge should be sustained on grounds of poor work performance." Nonetheless, when he refused to pare down his noncounty work hours, the commission sustained his termination.

Baity then petitioned the trial court for a peremptory writ of mandate ordering the county to set aside its decision and to reinstate him. He advanced four independent arguments to bolster his underlying insistance that his discharge was invalid—none proved persuasive. Hence, though the court found that Baity "performed his County duties acceptably," it upheld the discharge as "reasonable." This appeal ensued.

Essentially, Baity here attempts to establish the propriety of his refusal to conform with the county's edict by arguing that section 72 constitutes an unlawful "irrebuttable presumption" that a county employee's efficiency is necessarily impaired if he works a second job for more than 24 hours per week: he maintains that such an assumption is constitutionally objectionable because it advances a conclusion that has no definite basis in fact. In addition, he insists that forcing adherence to the section's mandate would result in the county's arbitrary elimination of his fundamental property interest in his city employment in violation of his rights to due process. Finally, he contends that the commission— and the court—improperly construed section 72 because its wording reveals that in promulgating the restrictions the board of supervisors was only concerned with those employees whose outside work materially interfered with their county duties and responsibilities.

## DISCUSSION

By limiting the number of weekly hours that a county employee is permitted to work on outside jobs—to moonlight—the county board of supervisors chose a wholly reasonable method of safeguarding the efficiency of the county work force. Certainly, if a state can prescribe maximum hours of work generally—e.g., *Bunting* v. *Oregon* (1917) 243 U.S. 426 [61 L.Ed. 830, 37 S.Ct. 435]; *Muller* v. *Oregon* (1908) 208 U.S. 412 [52 L.Ed. 551, 28 S.Ct. 324]; *Bautista* v. *Jones* (1944) 25 Cal.2d 746, 749 [155 P.2d 343]—a county can limit the number of work hours for its own employees, in whose welfare it is most directly interested. Of course, there will always be some employees whose efficiency is not impaired by outside work in excess of 24 hours per week just as, conversely, there will be some who are unable to perform efficiently even if they work less than the 24 extra hours which the

ordinance permits. It is safe to assume that many of the workers affected by the maximum-hours laws upheld in *Bunting* and *Muller, supra*, were wont to get their second wind when the statutes in question said "stop."[1] Or, as the United States Supreme Court put it more recently, albeit in a different context: "While such a limitation doubtless proves in particular cases to be 'under-inclusive' or 'over-inclusive,' in light of its presumed purpose, it is nonetheless a widely accepted response to legitimate interests in administrative economy and certainty of coverage . . . ." (*Weinberger* v. *Salfi* (1975) 422 U.S. 749, 776 [45 L.Ed.2d 522, 545].)

Baity claims, however, that a trilogy of relatively recent United States Supreme Court cases invalidates what he chooses to characterize as a conclusive presumption that more than 24 hours of outside work would impair his efficiency as a county worker. The cases relied upon are, in chronological order, *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208] *Vlandis* v. *Kline* (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230] and *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632 [39 L.Ed.2d 52, 94 S.Ct. 791].

The very first of these cases defines the framework for our consideration of the challenged ordinance. Discussing the Illinois procedure under which the natural father of an illegitimate child was denied a hearing on his fitness as parent after the mother's death, the court commented: "In considering this procedure under the Due Process Clause, we recognize, as we have in other cases, that due process of law does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria Workers* v. *McElroy*, 367 U.S. 886, 894 (1961). That case explained that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' and firmly established that 'what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' *Id.*, at 895; *Goldberg* v. *Kelly*, 397 U.S. 254, 263 (1970)." (*Id.*, at pp. 650-651 [31 L.Ed.2d at p. 558].)

The question then becomes whether the respondent county may prohibit outside work of more than 24 hours per week across the board, or

---

[1] Several California laws relating to maximum hours will be found in part 2 of division 2 of the Labor Code, starting with section 510.

whether due process demands that each employee be given an opportunity to establish his individual ability to work more than that number of hours without loss of efficiency.

Without stopping to compare the nature of the governmental functions involved in this case, as distinguished from those with which the *Stanley, Vlandis* and *LaFleur* cases were concerned, it is obvious to us that the private interest involved—petitioner's supposed right to combine full-time outside employment with a full-time civil service position—pales into insignificance when compared to the private rights that were arbitrarily affected in those three cases. In *Weinberger v. Salfi, supra*, 422 U.S. 749, the Supreme Court itself summarized them as follows: "*Stanley* v. *Illinois* held that it was a denial of the equal protection guaranteed by the Fourteenth Amendment for a State to deny a hearing on parental fitness to an unwed father when such a hearing was granted to all other parents whose custody of their children was challenged. This Court referred to the fact that the 'rights to conceive and to raise one's children have been deemed "essential," *Meyer* v. *Nebraska*, 262 U.S. 390, 399 (1923), "basic civil rights of man," *Skinner* v. *Oklahoma*, 316 U.S. 535, 541 (1942), and "[r]ights far more precious...than property rights," *May* v. *Anderson*, 345 U.S. 528, 533 (1953),' 405 U.S., at 651.

"In *Vlandis* v. *Kline*, a statutory definition of 'residents' for purposes of fixing tuition to be paid by students in a state university system was held invalid. The Court held that where Connecticut purported to be concerned with residency, it might not at the same time deny to one seeking to meet its test of residency the opportunity to show factors clearly bearing on that issue. 412 U.S., at 452.

"In *LaFleur* the Court held invalid, on the authority of *Stanley* and *Vlandis*, school board regulations requiring pregnant school teachers to take unpaid maternity leave commencing four to five months before the expected birth. The Court stated its long-standing recognition 'that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment,' 414 U.S., at 639-640, and that 'overly restrictive maternity leave regulations can constitute a heavy burden on the exercise of these protected freedoms.' *Id.*, at 640." (*Id.*, at p. 771 [45 L.Ed.2d at p. 542].)

In brief, the ordinance challenged in this case did not indiscriminately deprive natural fathers of their children, prohibit resident students from attending their own state university as residents or penalize motherhood by arbitrarily preventing teachers from pursuing their profession when they were able to do so. We note, however, with interest, that even in *LaFleur* the court, in footnote 13, hinted that it would have no objection to "maternity leave regulations requiring a termination of employment at some firm date during the last few weeks of pregnancy . . . ." provided such regulations were based on "widespread medical consensus about the 'disabling' effect of pregnancy on a teacher's job performance during the latter days . . . ." (414 U.S., p. 647 [39 L.Ed.2d, p. 64].)

We do not know on what information the respondent county acted when it passed the ordinance in question. It is, however, presumed to be based on "any state of facts supporting it that reasonably can be conceived." (*Higgins* v. *City of Santa Monica* (1964) 62 Cal.2d 24, 30 [41 Cal.Rptr. 9, 396 P.2d 41].)

To sum up: The putative right of which petitioner deems himself deprived is simply not in the same class as the rights arbitrarily affected by the state action involved in *Stanley, Vlandis* and *LaFleur*. ██ Based on the flexible approach reaffirmed in *Stanley*, we hold that due process does not demand individualized consideration of every employee's ability to perform more than 24 hours of outside work per week without any effect on job efficiency.

Baity makes a second argument to the effect that the ordinance in question deprives him of his fundamental right to work without due process. Frankly, we have some difficulty in distinguishing this argument from the one just disposed of. Just for the sake of completeness, however, we will note that we know of no fundamental constitutional right to two full-time jobs.

██ Finally, we disagree with Baity's insistence that proper construction of section 72 would authorize him to remain in his county position because the section's closing sentence requires the ordinance to be interpreted and implemented so as to permit moonlighting unless it in fact impairs an employee's county work efficiency.

The sentence in question reads: "It is the purpose of this provision to prohibit the employment of persons in paid fulltime County positions

who, by reason of their outside activities, impair their efficiency in the County service." Baity asserts that this statement of purpose gives rise to the requirement that the county initiate proceedings against a moonlighting employee only after it appears that the excessive outside activity is in fact impinging on the employee's county work performance. We disagree. In our view, the declaration does no more than explain the reasoning behind the supervisor's clearly permissible action.

We sympathize with Baity's predicament: he is apparently an industrious employee whose efficiency is unimpaired by outside employment in excess of 24 hours per week. Nevertheless, we must conclude that the trial court justifiably upheld the commission's order discharging him for his wilful refusal to comply with valid work rules directly applicable to him.

There was no error.

Affirmed.

Stephens, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1980. Mosk, J., and Newman, J., were of the opinion that the petition should be granted.